# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| THE VARIABLE ANNUITY LIFE § <br> INSURANCE COMPANY, § <br> § <br> Plaintiff, § <br> § <br> VS. § <br> § <br> BENCOR, INC., § <br> § <br> Defendant. § | CIVIL ACTION NO. H-05-1843 |

## ORDER DENYING PRELIMINARY INJUNCTION
## AND ENTERING FINDINGS AND CONCLUSIONS

On June 22, 2005, this court held an evidentiary hearing on the application for preliminary injunction filed by plaintiff, The Variable Annuity Life Insurance Company. At the conclusion of the hearing, based on the pleadings, the application and response, the parties' admissions, the evidence, the arguments of counsel, and the applicable law, this court denied the application and entered findings and conclusions. Bencor has submitted a proposed written order and VALIC has submitted objections. This court now enters the following written findings and conclusions.

This contract dispute is the subject of a pending arbitration proceeding. The contract allows the parties a limited right to seek injunctive relief pending arbitration.

This court has diversity jurisdiction under 28 U.S.C. § 1332. Texas law applies to the substantive legal issues.

This dispute arose when Bencor terminated the parties' Marketing Agreement, asserting that VALIC had breached by ceasing its practice of paying commissions to Bencor under an Amendment to the Agreement, and by exercising an asserted right to offset money due under the Agreement to recoup $11.5 million VALIC had paid Bencor in commissions over the previous 22 months.  Bencor's right to compete with VALIC through the end of the contract term depended on whether Bencor was justified in terminating the Agreement, which in turn depended on whether VALIC had breached.  VALIC asserted that its refusal to pay commissions and to offset money due under the Agreement and Amendment to recoup previously-paid commissions was consistent with the Agreement and Amendment and that Bencor had terminated without cause or justification.  VALIC asserted that it would be irreparably harmed by Bencor's competition in advance of the contractual termination date of November 2007.  This court allowed limited expedited discovery and held an evidentiary hearing.  At the conclusion of this hearing, this court entered the findings and conclusions.

To obtain preliminary injunctive relief, a plaintiff must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).  This court found and concluded that VALIC did not show a likelihood of succeeding on the merits because it did not present evidence at the preliminary injunction hearing that defendant Bencor improperly terminated the Agreement.

The evidence presented at the preliminary injunction hearing did not show that the Marketing Agreement and Amendment permitted VALIC to stop the payment of commissions to Bencor. The evidence in the record before the court at the preliminary injunction hearing did not show that VALIC was justified in exercising a right to offset $11.5 million in commissions it had paid for 22 months after the parties had entered into the Amendment to the Marketing Agreement. This court found and concluded that the record did not show that the conditions precedent to VALIC's right to enforce the noncompetition provisions of the contract were met.

This court found and concluded that the Marketing Agreement and Amendment were internally inconsistent, unclear, and susceptible to the conflicting interpretations asserted by both VALIC and Bencor. VALIC asserted that the Amendment allowed it to refuse to pay any commissions for what the parties termed "Schedule 3" cases, which were the major source of value under the Marketing Agreement. Bencor asserted that the Marketing Agreement and Amendment required VALIC to continue to pay the commissions for the Schedule 3 cases, except that it did not have to continue to pay commissions on "Backend Sales" and the deposit of "Drop Rollovers." The Marketing Agreement and Amendment could be interpreted to support the meaning Bencor preferred and the meaning VALIC preferred. A contract is ambiguous if it is reasonably susceptible to more than one interpretation. *Childers v. Pumping Systems, Inc.*, 968 F.2d 567 (5th Cir. 1992); *Gonzalez v. Denning*, 394 F.3d 388 (5th Cir. 2004).

Because the relevant contractual provisions are ambiguous, this court considered evidence bearing on the parties' intended meaning, including how the parties conducted themselves under the Marketing Agreement and Amendment. The evidence showed that VALIC continued to pay more than $11 million in commissions over a 22-month period after the Amendment was executed. By these payments, VALIC interpreted and implemented the Marketing Agreement and Amendment to mean what Bencor contends it means. The only testimony offered by VALIC as to why it paid Bencor commissions exceeding $11 million dollars over a 22-month period was not persuasive.

If, as VALIC asserts, the relevant contract terms were clear and allowed VALIC to cease paying commissions on the Schedule 3 cases, the evidence before the court at the preliminary injunction hearing supported Bencor's argument that the parties entered into the Amendment permitting this result by mutual mistake. As soon as Bencor became aware of VALIC's interpretation of the Agreement and Amendment, Bencor made known its disagreement and asserted that it had not intended such a result. The evidence does not show that Bencor ratified or acquiesced in VALIC's current interpretation of the Amendment with respect to the Schedule 3 commissions.

This court finds that VALIC has not made a sufficient showing that it is likely to succeed on the merits of its position that the Marketing Agreement and Amendment allowed it to stop paying commissions on the Schedule 3 cases or recoup previously-paid commissions, making its decision to do so a breach of the Agreement and Amendment.

Nor is this court persuaded by the testimony of the only witness VALIC offered on irreparable harm. VALIC complained is that it would suffer a loss of revenue and reputation through loss of plans and plan participants if Bencor competed for plan participants and plan sponsors' investments. Based on the evidence presented at the preliminary injunction hearing, this court finds that the effects of such competition on revenues are measurable in money damages. Although VALIC also complained that it would suffer irreparable harm from the loss of cross-marketing business opportunities, the evidence presented on this point was too attenuated and speculative to serve as the basis for a preliminary injunction. This court found that VALIC had not made a sufficient showing of irreparable harm if an injunction is not entered.

This court also finds that the equities would not be served by granting an injunction. This contract dispute concerns the provision of certain kinds of retirement plan products to certain categories of people, and there are mechanisms in place to protect and to serve the needs of the plan participants. The public interest is not disserved if an injunction is not granted. With respect to the equities between the parties before the court, VALIC requested an injunction that would require Bencor to continue to operate under the Agreement as interpreted by VALIC. The balance of the equities weighs against placing the parties in a position in which they would be required to work together, but Bencor would have to continue to use VALIC's investment products, for which it would receive no money, but instead would incur further costs. This court found that neither the equities nor public interest is served by granting the requested injunction.

VALIC's request for preliminary injunction is denied.

SIGNED on September 6, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge